# Russell, *et al. v.* Stockton, *et al.*

### Bill to Foreclose Vendors Lien.

(Decided January 12, 1917.   Rehearing denied February 15, 1917.
74 South. 225.)

**1. Vendor and Purchaser; Waiving Vendor's Lien; Accepting Void Second Mortgage.**—A vendor's purchase-money lien was not waived where the vendees executed a void second mortgage to the vendor shortly before his death, but the instrument was not examined by him or by his family until a month after his decease.

**2. Vendor and Purchaser; Waiving Vendor's Lien; Accepting Purchaser's Notes.**—A vendor's purchase-money lien was not waived by accepting the vendees' promissory note containing a waiver of exemptions.

**8. Mortgages; Priority; Vendor's Lien.**—One loaning vendees money to purchase land, with the vendor's knowledge and perhaps an agreement to have preferred security for such advances, and later accepting a mortgage from the vendees for a larger amount, has a claim prior to the vendor's lien for the amount advanced toward the purchase price.

**4. Appeal and Error; Parties Entitled to Allege Error; Error Affecting Coparty.**—A mortgagee cannot complain on appeal that the deed to his mortgagors should be reformed where the mortgagors, although coparties defendant with the mortgagee, did not appeal.

APPEAL from Morgan Law and Equity Court.
Heard before Hon. THOMAS W. WERT.
Bill by M. A. Stockton and others against T. J. Russell and others to foreclose a vendor's lien.   Decree for complainants and respondent Russell appeals.   Reversed and remanded.

SAMPLE & KILPATRICK for appellants.   WERT & LYNNE for appellees.

SAYRE, J.—This bill was filed by the widow and minor heirs of A. M. Stockton, deceased, to foreclose a vendor's lien for the unpaid balance of the agreed purchase price of a certain tract of land which deceased had sold to the defendants D. W. and C. L. Thomas, who were his son-in-law and daughter.   The defendants aforenamed had mortgaged the land to T. J. Russell, and he is made a party defendant to the bill with a prayer that his mortgage be declared subordinate to the lien claimed.   Relief, according to the prayer of the bill, was awarded against all the defendants in the law and equity court of Morgan.

[Russell, et al. v. Stockton, et al.]

(1, 2) The principal question is, whether deceased waived his vendor's lien for the whole or any part of the unpaid balance of the purchase price. It appears that a mortgage was to be made to secure this balance; but it cannot be supposed that the grantor intended to waive his equitable lien in reliance upon a mortgage that afforded him no security at all. It is evident, rather, that if he intended, or if by force of circumstances he may be held at any time or in any case to have intended, to waive his lien by taking an independent security, that intention was conditioned upon the execution of a valid security. An instrument purporting to be a second mortgage was delivered to him; but it was prepared in collaboration by his grantees and their mortgagee some days after the execution and delivery of the deed, without the knowledge or participation of Stockton, who was then confined to his bed by his last illness. The instrument was not examined at the time by Stockton or any member of his household, nor was it discovered by them that it purported to be a second mortgage until after his death about a month later. This instrument was in fact no security; it was void because it was not executed as required by the statute. Its acceptance in the manner and under the circumstances indicated did not prove a waiver of the vendor's equitable lien.—*Gravlee v. Lampkin,* 120 Ala. 210, 24 South. 756; *Campbell v. Goldthwaite,* 189 Ala. 1, 66 South. 483; *Chapman v. Chapman,* 55 Ark. 542, 18 S. W. 1037. Nor did the acceptance of the promissory note of the vendees amount to a waiver of the vendor's lien, though it contained a waiver of exemptions.—*Thompson v. Sheppard,* 85 Ala. 611, 5 South. 334; *Woodall v. Kelly,* 85 Ala. 368, 5 South. 164, 7 Am. St. Rep. 57.

(3) The defendant Russell, who alone takes this appeal, insists that, to the extent of $450 at least, the amount of the payment made at the time of the sale, he should have a lien decreed in his favor in precedence of the vendor's lien to be declared in favor of the complainants. Prior to the transaction in question Stockton was indebted to Dr. Turney in the sum of $300, and this indebtedness was secured by a mortgage which covered the 80-acre tract here involved and as well another smaller tract about a mile away to which the witnesses refer as the old home place. It appears very certainly that one inducement leading Stockton to the transaction in question was his desire to leave to his wife and minor children the place where he then lived as an unincum-

bered homestead. He also preferred that the sale should be a cash transaction; but he knew that Thomas expected and would need to borrow the money from Russell. After Russell declined to advance the whole purchase price, to-wit, $1,100. Stockton accepted a cash payment of $450, leaving the balance to be payable nominally one year later, but with the understanding that the principal might be deferred for some years, provided interest was paid. This balance Russell advanced by paying the debt due to Dr. Turney and sending a check to Stockton for $150.

At first we wrote that Russell was not entitled to priority for any part of the mortgage he held from Thomas and wife. He claimed priority for his entire debt; but it was, and is now, clear that Stockton did never intend that Russell should have a prior lien for the entire amount of the debt Thomas owed him and which Russell took occasion to swell by purchasing an outstanding claim against Thomas and including the same in the ostensible first mortgage which he took from the latter. However, now upon reconsideration we think that we, like the chancellor perhaps, were led too far by our reprobation of the fact that an effort appeared to have been made to impose upon Stockton by putting him off with a mortgage that would be subordinate to appellant's mortgage in its entirety and to bind him (Stockton) by the false appearance of a waiver of priority more extensive than he intended. Considering the case again, we are still clear in our opinion that appellant is not entitled to a priority to the full extent of the debt for which Thomas and wife executed their mortgage to him; but we have concluded that the competent evidence, an influential part of which comes from a source friendly to appellees, shows that appellant advanced the sum of $450 with the just expectation (*Bell v. Bell*, 174 Ala. 446, 56 South! 926, 37 L. R. A. [N. S.] 1203)—perhaps even with an express agreement (*Wilder v. Wilder*, 89 Ala. 414, 7 South. 767, 9 L. R. A. 97, 18 Am. St. Rep. 130)—that he was to have a security for its repayment prior to the vendor's lien for the balance of the purchase price, and that it would be an unwarranted interference with his contract or quasi contract right to a priority to the extent of the sum so advanced, and acquired by appellant when he advanced the money, to hold that his priority to that extent was forfeited by his subsequent effort to swell his priority to the full extent of the larger mortgage which, as against Thomas and wife, he rightfully took.

(4) In regard to the prayer contained in the cross-bills of the respective defendants for a reformation of the deed from Stockton to Thomas and wife, it will suffice to say that the Thomases do not appeal, and that no relief in this respect can be granted to Russell for the reason that there is no proof of any mistake in the mortgage under which he claims.

The decree will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion. If it shall appear to the court below by way of appropriate pleading and proof that the defendant Russell should in equity be charged with rents and profits as a mortgagee in possession before foreclosure, the court will order a reference to ascertain the proper amount of such charge, and allow the same in reduction of Russell's priority.

Reversed and remanded. '

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.