184 So.2d 815

Colie Lee MARTIN

v.

FIRST NATIONAL BANK OF OPELIKA.

5 Div. 815.

Supreme Court of Alabama.

March 31, 1966.

Russell, Raymon & Russell, Tuskegee, for appellant.

Samford, Torbert & Denson, Opelika, for appellee.

HARWOOD, Justice.

This is an appeal from a decree of the Circuit Court of Macon County, In Equity, in a declaratory action, holding that certain advances made to appellant's husband by the appellee were secured by a mortgage executed to appellee bank by the appellant and her husband.

The appellant, Colie Lee Martin, and her husband, Hughie Martin, purchased a tract of land in Macon County containing 80 acres from one Francis Thompson and wife on October 5, 1956, for the sum of $7,000. Title to said property was taken in the name of appellant and her husband as joint tenants with the right of survivorship. On the same date appellant and her husband executed a mortgage on said lands to the appellee to secure a loan of $2,000, said loan being evidenced by their promissory note of even date, due one year after date, with interest. The appellant and her husband occupied the property as their home from the date of the purchase until the date of her husband's death on February 6, 1963. The appellant and her minor children were

still occupying said property as their homestead at the time of trial of this suit.

The note for $2,000 and the mortgage securing the same were signed by both appellant and her husband. The mortgage contains an "advance clause," set out in the consideration clause of the mortgage, as follows:

"Now, therefore, in consideration of the premises and of said indebtedness and in order to secure the prompt payment of the same according to the terms and stipulations contained in said note, *and to secure any other amount that the mortgagee or his assigns may advance to the mortgagor before the payment in full of said mortgage indebtedness,* the said mortgagors, Hughie Martin and Colie Lee Martin, husband and wife, hereby grant, bargain, sell * * * (Emphasis ours.)

The first paragraph of the mortgage describing the parties thereto refers to "Hughie Martin and Colie Lee Martin, husband and wife, hereinafter called *mortgagor* * * * (Emphasis ours.) Throughout the mortgage the word "mortgagor," the singular, is used in referring to both mortgagors, except in two places, one being the granting clause and the other pertaining to the payment of taxes on the property.

In paragraph five of the mortgage, a defeasance clause, it is provided that the mortgage shall be subject to foreclosure if the mortgagor fails to pay the note "and advances, if any." Paragraph six provides for the application of proceeds of sale of the mortgaged premises to the debt "including advances."

Paragraph nine is as follows:

"Unless a contrary intention is indicated by the context, words used herein in the masculine gender include the feminine and the neuter, *the singular includes the plural and the plural the singular."* (Emphasis ours.)

The terms of the mortgage also provide that the mortgagor waives all "right of homestead and personal property exemption" provided under the Constitution and laws of the State of Alabama and of any other state.

The lower court found that the $2,000 borrowed from the appellee by the appellant and her husband was applied on the payment of the purchase price of the property in question.

It appears that approximately one year after the execution of the original note and mortgage the appellant and her husband made a payment to the appellee of $400 on principal and a renewal note for $1,600, due in one year from date, was executed. This note was signed by both husband and wife. Approximately one year later appellant and her husband paid $200 on principal and executed a renewal note in the amount of $1,400, due one year later. This note was also signed by both husband and wife. Some six months later a payment of $1,000 was paid on principal which was noted on the $1,400 note, leaving a balance of $400. Upon the arrival of the due date of this second renewal note, another renewal note was given to appellee to secure the $400 indebtedness then outstanding. This note was not submitted into evidence, however, the president of the appellee bank testified that it was executed by both husband and wife. Upon the due date of this third renewal note a payment of $300 was made leaving an outstanding balance of $100, and the appellant's husband executed a renewal note for $100 due one year from date. The appellant did not sign this note. Approximately one month later the appellant's husband executed a note for $2,000, payable one year from date. The appellee advanced the appellant's husband $1,900 in cash and applied $100 to the last note executed by appellant's husband. The appellant did not sign this note. Approximately one year later the appellant's husband paid $1,000 on principal on the last mentioned note and executed a renewal note for $1,000. The

appellant's husband died before the due date of this last note.

Each of the renewal notes mentioned above were marked "Ext. Mtge. Real Estate." The appellee bank retained possession of the original note and mortgage throughout these transactions.

The appellant's bill for a declaratory judgment alleges in part that she was under opinion and impression that the mortgage on the property had been paid in full; that the appellee was claiming the sum of $1,000 due on the mortgage; that the basis of said claim was an advance or extension given her husband secured by a note which she did not sign; that she had no knowledge of such transaction prior to her notification by the appellee that it was claiming under an extension of said mortgage; that she had not executed any instrument extending the mortgage on the homestead; and that said transaction was done without her knowledge. The prayer for relief asked that the lower court declare that the transaction between her husband and the appellee bank be declared not an extension of the mortgage on the homestead; that the original mortgage had been satisfied prior to the advancement in question which was made to her husband; and that any indebtedness is against her husband's estate and is not an indebtedness secured by the mortgage referred to in these proceedings.

The trial court found that the advance of $1,900 made by the appellee bank to appellant's husband on a note executed by him alone was and is secured by the mortgage executed by appellant and her husband on October 5, 1956; that the original indebtedness secured had not been paid in full at the time of the said advance of $1,900, the sum of $100 remaining unpaid; and that there was now due appellee bank the sum of $1,000 plus interest, which indebtedness was then in default.

The appellant has argued six assignments of error.

Assignment of error No. 1 is based upon the trial court's holding that the original mortgage was a purchase-money mortgage and therefore superior to any homestead rights of the appellant.

The appellant insists that a purchase-money mortgage can only be given to a vendor as a substitute for his vendor's lien and therefore a mortgage given to a third party, who advances the purchase price to the vendee, cannot be a purchase-money mortgage as the third party has no vendor's lien for which a mortgage can be substituted.

█ The fact that a mortgage is made to a person other than the vendor does not alone prevent its being a purchase-money mortgage. A mortgage on land executed to secure the purchase money by a purchaser of the land executed contemporaneously with the acquisition of the legal title thereto, or afterward, but as a part of the same transaction, is a purchase-money mortgage. 36 Am.Jur., Mortgages, Section 15; 59 C.J.S. Mortgages § 168; Lipps v. Lipps, (Ohio App.), 87 N.E.2d 823, 827; Hill v. Hill, 185 Kan. 389, 345 P.2d 1015; Wermes v. McCowan, 286 Ill.App. 381, 3 N.E.2d 720. In the case of Birmingham Building & Loan Association v. Boggs, 116 Ala. 587, 22 So. 852, it was held that a mortgage given to a party, other than the vendor, who loaned money to the vendee to be applied to the purchase price as part of one transaction, was superior to a mechanic's or material-man's lien. In Russell v. Stockton, 199 Ala. 48, 74 So. 225, the mortgagee who advanced part of the purchase price was held to have a lien superior to the vendor's lien where that was found to be the intention of the parties. In Cates v. White, 252 Ala. 422, 41 So.2d 401, a mortgage given to a party, other than the vendor, who advanced the purchase price, was held to be a purchase-money mortgage given contemporaneously with the purchase and to be superior to a homestead exemption claim.

Section 627, Title 7, Code of Alabama 1940, provides in part that the provisions of the chapter containing such section do

not prevent any lien attaching to the homestead in favor of "any vendor for unpaid purchase money, or so as to affect any deed, mortgage, or lien on such homestead, lawfully executed or created."

It is apparent therefore that a lien secured by a mortgage which is lawfully executed or created is superior to a claim of homestead exemption. The constitutional and statutory provisions, requiring separate voluntary acknowledgment by the wife, are for the benefit of the wife. Leonard v. Whitman, 249 Ala. 205, 30 So. 2d 241. The purpose of the statutory provision requiring voluntary signature and assent is to safeguard the wife from duress of the husband. Weatherwax v. Heflin, 244 Ala. 210, 12 So.2d 554.

Even if this mortgage had not been executed to secure the mortgagee's advancement of part of the purchase price and contemporaneously with the purchase of the property in question, the appellant fails to demonstrate why, considering the terms of this mortgage, this encumbrance would not be superior to her claim of homestead exemption in as much as it appears she voluntarily signed the original note and mortgage. Assignment of error No. 1 is without merit.

Appellant's second assignment of error is based upon the trial court's holding that the advance of $1,900 made by appellee to appellant's husband on a note executed by him alone was secured by the mortgage executed jointly by appellant and her husband on October 5, 1956.

The appellant concedes that in the original mortgage she did sign and assent to the execution of this mortgage on the homestead. She insists, however, that the subsequent advance of $1,900 was made to her husband alone without her knowledge or consent and that she had no notice of the execution of this note until after her husband's death. It is appellant's contention that the effect of the trial court's holding is that a husband can encumber the homestead without the knowledge or consent of his wife, and thus is in direct conflict with Title 7, Section 626, of the Code pertaining to alienation of a homestead when the grantor is a married man.

The original mortgage was given to secure the stated indebtedness of $2,000 and *"to secure any other amount that the mortgagee or his assigns may advance to the mortgagor before the payment in full of the mortgage indebtedness."* (Emphasis ours.) The terms of the mortgage do not on the face thereof limit any advance to a certain amount. The only restriction in such terms is that such advances must be "before the payment in full of said mortgage indebtedness."

In the leading case of First National Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64, the dragnet provision in the consideration clause of the mortgage provided it was to secure an indebtedness of $7,500 "and any other indebtedness owing by the said W. N. Bain to the grantee before the full payment of this mortgage." After a reference, the Register reported that the mortgage was given to secure only the $7,500, and did not secure other debts owed by Bain to the bank prior to the payment of the mortgage. This report of the Register was confirmed by the Chancellor.

In reversing, rendering, and remanding the cause for further proceedings, the late Bouldin, J., writing for the court, set forth:

"When a mortgage sets out and defines a specific indebtedness secured thereby, provisions extending the security to other indebtedness in general terms were formerly viewed with disfavor. They may serve to take advantage of the confiding or the illiterate.

"But it is now the settled law of Alabama, and throughout this country, that clear and express provisions extending the security to other existing indebtedness or to future indebtedness between the same parties are given full effect. Indeed, it is held on high authority, that in many cases it would be a great hardship

if this rule did not obtain as regards future indebtedness incurred or assumed by the mortgagor. For example, a bank customer, having occasion in his business operations, to obtain frequent loans, may thus avoid the necessity of giving repeated mortgages.

"Such mortgages have become a recognized form of security. 19 R.C.L., p. 295, § 68; Note, Ann.Cas.1913C, 552, 553.

"In Collier v. White, 97 Ala. 615, 12 So. 385, 386, this court held 'A provision in a chattel mortgage reciting that it secures a note and any other amount the mortgagor may owe the mortgagee in the year it is made, is valid and secures every character of indebtedness by the former to the latter arising during the year.'

"The mortgage need not specify any particular sum. * * *"

As above stated, in the mortgage now under consideration, the husband and wife mortgagors, Hughie Martin and Colie Lee Martin, in the very first paragraph are referred to as "mortgagor", that is in the singular. Thereafter, in the mortgage, with two exceptions, the word "mortgagor" is used throughout. One provision was that the "mortgagor" was to keep the property insured.

In his decree the Chancellor observed that:

"In the absence of paragraph 9 of the mortgage, this Court would be inclined to hold that the advance clause covered only advances to the husband and wife jointly, as was held in the Mississippi case of Davis v. Crawford, supra" ([175 Miss. 493] 168 So. 261.) "However, paragraph 9 of the mortgage in the instant case, a contractural stipulation, must be considered in construing the mortgage as a whole and particularly the advance clause thereof".

As before noted, paragraph 9 of the mortgage sets forth that:

"Unless a contrary intention is indicated by the context * * * *the singular includes the plural, and the plural the singular.*" (Emphasis ours.)

The Chancellor then posed the question whether paragraph 9 did not have the same effect as if the consideration clause, with its advance provisions, had recited that it was given to secure any advance made to the mortgagors jointly or to either of them. The Chancellor concluded that such was the effect of the context of the mortgage and that the word "mortgagor" included advances made to either or both mortgagors.

■ We are in accord with, and affirm, the views of the Chancellor as above expressed.

■ The appellant voluntarily consented to the alienation of her right of homestead by signing the mortgage which was properly acknowledged and executed. She thereby consented to be bound by the terms of the mortgage for any advance that might be made to her, or her husband, or to both jointly, when such advance was made "before the payment in full of said mortgage indebtedness."

In argument in support of assignment of error No. 2, counsel insists that Weatherwax v. Heflin, 244 Ala. 210, 12 So.2d 554, demonstrates the error of the Chancellor's holding that the advance of $1,900 made by the appellee bank to appellant's husband as a note executed by him alone, was covered by the mortgage.

However, the mortgage being considered in *Weatherwax*, supra, did not contain an advance clause contractually stipulating for further advances under the mortgage. The advance clause in the present mortgage removes all doubt as to whether it was the intention of the parties at the time the mortgage was executed that advances made pursuant to the advance clause were covered by the mortgage. We do not consider the present question within the influence of *Weatherwax*, supra, due to the factual dif-

ferences between that case and the one now being considered.

We find no merit in assignment of error No. 2.

The appellant's third assignment of error is to the effect that the trial court erred in holding that the original indebtedness of $2,000 secured by the mortgage had not been paid in full at the time of the advance of $1,900 to the appellant's husband.

It is appellant's contention that the giving of a new note on the due date of the previous note extinguished or discharged the prior indebtedness and created a separate new indebtedness.

■ Whether execution of a new note was an extension or payment of the old note is a matter of intention of the parties. McGuire v. Van Pelt, 55 Ala. 344; Bank of Oakman v. Thompson, 231 Ala. 73, 163 So. 614; First National Bank v. Lafon, 231 Ala. 403, 165 So. 233; Forlines v. Paulk, 243 Ala. 516, 10 So.2d 864.

■ The mortgagee bank throughout retained the original note and mortgage executed by appellant and her husband and it is inferable that the parties did not consider the execution of a new note on the due date of the previous note with a sum still outstanding to be a payment or release of the unpaid indebtedness and release of the security, but simply an extension. This for the reason that all renewal notes contained a notation indicating that it was an extension of the mortgage on the property. While it has been held that a mortgage to secure advances and credits to be made within a certain limited time will not be available as a security for any advances made after the time designated, Johnson v. First National Bank, 205 Ala. 420, 88 So. 449; Winston v. Farrow, Ala., 40 So. 53 (not reported in State Rep.), the time designated in the present mortgage was "before the payment in full of the mortgage indebtedness." A part of the mortgage debt remained unpaid at the time of the execution of the advances in question to appellant's husband.

We find no merit in assignment of error No. 3.

Assignment of error No. 4 asserts that the trial court erred in holding that there is now due $1,000 on the mortgage, together with interest from 28 September 1962 until paid.

It is appellant's contention that the present transaction was in violation of Section 74, Title 34, Code of Alabama 1940, as said section read at the time of the execution of the mortgage.

At such time Section 74 provided:

"The husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations; *but the wife shall not, directly or indirectly, become the surety for the husband.*" (Emphasis ours.)

We note that by an Act approved 21 June 1957, (1957 Acts of Alabama, Vol. 1, page 101) the emphasized phrase above was stricken from Section 74. Such change, however, in nowise affects our consideration since the mortgage was executed prior to said amendment of Section 74.

In his decree the Chancellor states that in a brief submitted by the attorney for the complainant, after the hearing below, but prior to his decision, the proposition now urged under assignment of error No. 4 was presented to him.

The Chancellor pretermitted consideration of this point stating that it was neither pleaded nor proved.

We agree with the Chancellor.

The complaint avers in paragraph 4, among other things, "that the amount advanced to the complainant's husband was not an amount advanced by the mortgagee to the mortgagor before the payment in full of said mortgage indebtedness as the complainant was not a party to the transaction

and knew nothing of the attempt to subjugate the homestead to the indebtedness created by the husband of the Complainant."

The above averment is not an averment that the debt was a debt of the husband for which the wife, directly or indirectly, became a surety.

Nor was there any proof directed to establishing such as a fact.

Where upon its face a mortgage indicates a joint liability of the husband and wife, the burden of proof rests upon the complainant. Forlines v. Paulk, 243 Ala. 516, 10 So.2d 864.

To be obnoxious to Section 74, even before the amendment thereto in 1957, the transaction, when analyzed, must be a debt or obligation due from the husband to the person who seeks to enforce the ancillary promise of the wife. Rhodes v. Tomlin, 267 Ala. 491, 102 So.2d 904.

Here the mortgage and note in question were signed by the appellant and her husband to secure the sum of money advanced by the bank to both parties and applied to the purchase price of the property conveyed to them as tenants in common with the right of survivorship. A part of the consideration was that both parties agreed to be bound on the advances made to either before payment of mortgage indebtedness, such advances to be secured by the mortgage signed and acknowledged by the appellant, and by the terms of which she waived her right of homestead exemption.

For the reasons above stated our conclusion is inevitable that assignment of error No. 4 is lacking in merit.

Assignments of error Nos. 5 and 6 are in general terms that the court erred respectively in entering a decree in favor of the respondent, and that the court erred in entering a decree against the complainant.

The evidence was ample to support the finding and conclusions of the court below, and the legal principles above set forth dispose in substance of these last two assignments.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.